# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| GLADYS WILSON, | ) | CASE NO. 1:16CV02186 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| THE CITY OF SHAKER HEIGHTS, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | |

This matter is before the Court on Defendant's, City of Shaker Heights Patrolman Martin Dunn (hereinafter "Ptl. Dunn" or "Defendant") Motion for Summary Judgment. (ECF #35). Plaintiff Gladys Wilson (hereinafter "Ms. Wilson" or "Plaintiff") filed a Brief in Opposition to Defendant's Motion for Summary Judgment. (ECF #42). Defendant filed a Reply in Support of their Motion for Summary Judgment. (ECF #45). Having considered all of the submissions, and having reviewed the undisputed facts and applicable law, this Court finds that Defendant's Motion for Summary Judgment should be GRANTED.

## Facts and Procedural History[1]

Plaintiff filed a Complaint with six causes of actions, alleging: (1) a violation of 42 U.S.C. § 1983 (hereinafter "§ 1983") for malicious prosecution; (2) a violation of § 1983 for Equal Protection; (3) a violation of § 1983 for Due Process; (4) a violation of § 1983 for First Amendment; (5) violation of § 1983 for liberty, safety, and privacy; and (6) a state law claim for intentional infliction of emotional distress. (ECF #1). The facts underlying her claims are largely undisputed, and are set forth below.

Gladys Wilson and Richard and Elizabeth Minkowetz are neighbors in the city of Shaker Heights. In 2005, the Minkowetz's purchased a black frog lawn ornament and placed it in their yard. Ms. Wilson believed the ornament was meant to bother her and was racially insulting. (ECF #35-1, p. 199). Since that time, Ms. Wilson began making signs and posted them in her window as a way to retaliate against the alleged misconduct by the Minkowetz's. In response to these signs, the Minkowetz's felt harassed and began communicating with the City of Shaker Heights Prosecutor's Office sometime in 2010. On December 11, 2014, City of Shaker Heights Patrolman Martin Dunn reported to the Minkowetz's home to interview them and take pictures of the signs. During this interview, Ptl. Dunn took pictures of the signs in Ms. Wilson's window. On the side of Ms. Wilson's house that faces the Minkowetz's home, Ptl. Dunn took pictures of signs that read "Thur. 10:50" and "Stop" and "2014 SOS Bull." (ECF #35-5, p. 257–58). In the rear of Ms. Wilson's house facing her backyard, Ptl. Dunn took pictures of signs that read "Nasty Lil Twit," "Zoomed Zapped and Snapped," "Dates Time, and Photos Available," "Peeping Tom Exposed," and "3654 Riedham Rd.," the address of the Minkowetz's home. (*Id.* at 260–63). Ms. Wilson approached Ptl. Dunn and asked

---

[1]Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

him why he was on her property, to which Ptl. Dunn responded that he was conducting a police investigation. Ptl. Dunn asked Ms. Wilson for identification, to which she refused and promptly went back inside her home.

Ptl. Dunn's turned over his Case Report for this matter to the City of Shaker Heights Prosecutor's Office, who, under the direction of Prosecutor Randolph Keller and Prosecutor Lisa Gold-Scott, charged Ms. Wilson with Disorderly Conduct in violation of Shaker Heights Codified Ordinance § 709.03 on March 31, 2015. That same day, Ptl. Dunn signed an affidavit to establish probable cause. (ECF #35-9, p. 284). Accordingly, the Shaker Heights Municipal Court found there was probable cause to charge Ms. Wilson with Disorderly Conduct. (ECF #35-9, p. 282). The charges against Ms. Wilson were ultimately dropped because it was thought by the Shaker Heights Prosecutor's Office that an administrative route to resolve this issue would be more appropriate. (ECF #38-1, p. 471).

Ms. Wilson then filed this instant lawsuit against the City of Shaker Heights, Prosecutor Randolph Keller, and Officer Martin Dunn. (ECF #1). The City of Shaker Heights and Prosecutor Randolph Keller each filed a Motion to Dismiss (ECF #12, 13). The City of Shaker Heights argued that the Complaint failed to allege specific facts to show that the City had an express policy in violation of the Constitution, a widespread practice or custom in violation of the Constitution, or that the Constitutional injury is caused by a person with final policymaking authority. (ECF #12, p. 4). Further, the City argued that the it held immunity from intentional torts. (ECF #12, p. 7). Prosecutor Randolph Keller argued that he was entitled to full prosecutorial immunity for both the § 1983 and state law claims. (ECF #13, p. 2). This Court granted the City's and the Prosecutor's motions to dismiss, agreeing with the defendants. (ECF #21). Accordingly, Ptl. Dunn, who did not file a motion

3

to dismiss, is the sole remaining defendant, and now moves for summary judgment.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing prior FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.

4

*Anderson*, 477 U.S. at 249–50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). A party asserting that a fact is genuinely disputed must cite "to particular parts of materials in the record" or show "that the [admissible] materials cited [by the other party] do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). FED. R. CIV. P. 56(e) states:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may... consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it...

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(c) also has certain, more specific requirements:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Wiley*, 20 F.3d at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

**A. § 1983 Claims**

To establish liability under § 1983 against state officials, a plaintiff must show that the officials, acting under color of state law, caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). In other words, the terms of § 1983 demand only two allegations: (1) that a person deprived the plaintiff of a federal right, constitutional or statutory; and (2) that the person acted under color of state law when depriving the plaintiff of the federal right. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). If either element is missing, then a § 1983 claim has not been pleaded. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Furthermore, when a § 1983 claim is alleged, the defense of qualified immunity is available to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether a government official may be held liable for an allegedly unlawful action "generally turns on the objective reasonableness of the action, assessed in light of the legal rules that were clearly established at the time [that the action] was taken." *Veney v. Hogan*, 70 F.3d 917, 920 (6th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The determination of whether an official is entitled to qualified immunity is a question of law for the district court. *See O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994) (citing *Poe v. Haydon*, 853 F.2d 418 (1989)).

When a defense of qualified immunity is asserted, the complaint or the amended complaint must be more than mere notice pleading. *See Veney*, 70 F.3d at 922. That is, the complaint or

amended complaint must conform to heightened pleading requirements and include:

> the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer 'used excessive force,' and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable.

*Id.* Pursuant to this standard, the plaintiff must allege not only a violation of her rights, but also "that those rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct." *Id.* at 921. Should the plaintiff fail to carry this pleading burden in either the original complaint or in an amended complaint filed in response to the defendant's assertion of the qualified immunity defense, dismissal is proper. *See id.*

For the reasons set forth below, Plaintiff cannot show a constitutional violation. Further, Plaintiff cannot show that even if there was a constitutional violation, that those rights were clearly established to a person in Defendant's position. Thus, summary judgment for Defendant must be granted.

### 1. 42 U.S.C. § 1983 - Malicious Prosecution

In Count one of the Complaint, Plaintiff asserts a claim of 42 U.S.C § 1983 for malicious prosecution. A claim for malicious prosecution under the Fourth Amendment encompasses damages caused by "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F. 3d 709, 715–16 (6th Cir. 2006). To prove malicious prosecution, the Sixth Circuit identified the following elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to

prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal citations and quotations omitted). Defendant contends that Plaintiff cannot satisfy the first two elements; that Defendant participated in or influenced the decision to prosecute and that there was a lack of probable cause. (ECF #35, p. 180). This Court agrees.

The Sixth Circuit has held that "a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, so long as the information he submitted to the prosecutor is truthful." *Kinkus v. Village of Yorkville*, 289 Fed. Appx. 86, 91 (6th Cir. 2008); *see also Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). An officer "will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Sykes*, 625 F.3d at 314.

In this case, it is clear that Defendant had no role in charging Plaintiff with disorderly conduct. Plaintiff asserts that Defendant admitted he was the one who charged the Plaintiff. (ECF #42, p. 543). However, this claim is not supported by the record. In fact, in Defendant's deposition, Defendant clearly articulated that he went to the prosecutor with his report without a listing of any charges. (ECF #42-1, p. 520–21). Only after showing the report to the prosecutor did Defendant list disorderly conduct on the report. (ECF #42-1, p. 520). Plaintiff also asserts that Prosecutor Lisa Scott-Gold admitted that Defendant was the one who brought charges. (ECF #42, p. 543). Again,

9

this claim is not supported by the record. In Prosecutor Gold-Scott's deposition, she does not state that Defendant was the one who brought charges, but merely agreed to how a charge may be brought in some instances. (ECF #37-1, p. 422). Here, Defendant turned over truthful materials to the prosecutors who then made the decision to charge the Plaintiff with disorderly conduct. Plaintiff points to no facts in the record that indicate Defendant turned over materials that were false and cannot demonstrate that Defendant influenced the decision to prosecute generally. Because an officer will not be liable for malicious prosecution when they merely turn over truthful materials, Plaintiff's malicious prosecution claim fails as a matter of law.

Even if Plaintiff could demonstrate that Defendant influenced the decision to prosecute, there was probable cause to prosecute Plaintiff. Shaker Heights Codified Ordinance § 709.03(A)(5) states in pertinent part:

> (a) No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following...
>     (5)    Creating a condition which is physically offensive to persons... by any act which serves no lawful and reasonable purpose of the offender.

Based on the record, there are enough facts to warrant probable cause that Plaintiff violated this ordinance. Although the charge was ultimately dropped, that does not suggest that there could not have been probable cause.

Plaintiff has not shown that Defendant influenced the decision to prosecute or that there was a lack of probable cause. As such, Defendant's Motion for Summary Judgment on the claim of malicious prosecution is GRANTED because there was no constitutional violation. Because Plaintiff has not demonstrated a constitutional violation, this court does not need to address whether Defendant has qualified immunity. *See Kinkus*, 289 Fed.Appx. at 93.

### 2. 42 U.S.C. § 1983 - Equal Protection

In Count Two of the Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983 for deprivation of right to equal protection. (ECF #1, p. 4). Specifically, Plaintiff alleges that "Defendants acted under color of law to deprive the Plaintiff of her Federal civil rights, namely her right to Equal Protection which is guaranteed to her and secured by the United States Constitution and Ohio Constitution." (ECF #1, p. 4). Assuming that Plaintiff's claim alleges a violation of the equal protection clause, the Court finds this claim to lack merit.

Unless a plaintiff alleges invidious discrimination based upon her membership in a protected class, the equal protection claim fails at its inception. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). Accordingly, in order to overcome Defendant's Motion for Summary Judgment, Plaintiff had to demonstrate that she was denied equal protection of the law based upon an unjustifiable standard such as race, religion, national origin, or some other arbitrary classification. *See id.* Stated another way, Plaintiff was obligated to demonstrate unfair treatment based upon her membership in the class, rather than unfair treatment merely as against an individual. *See id.* Because Plaintiff alleges merely unfair treatment against her as an individual, Defendant's Motion for Summary Judgment on this claim is GRANTED. Because there is no constitutional violation, it is unnecessary to further address whether Defendant has qualified immunity on this claim.

### 3. 42 U.S.C. § 1983 - Due Process

In Count Three of the Complaint, Plaintiff asserts a § 1983 claim for deprivation of right to substantive and procedural due process. (ECF #1, p. 5). Plaintiff's claim is misplaced and falls outside the scope of a procedural due process claim. Under a § 1983 claim for a deprivation of

11

procedural due process, a plaintiff must prove that the "state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). This is not a case where Plaintiff was not afforded an appropriate remedy. The City of Shaker Heights charged Plaintiff with disorderly conduct and commenced criminal proceedings. Through those proceedings, Plaintiff was never deprived of any protected interest.

Furthermore, Defendant is correct in asserting that the "Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005). In *Radvansky*, the Sixth Circuit explained that "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area," not the Fourteenth Amendment. *Id.* Thus, the Court concluded that the police officer was entitled to summary judgment on the Fourteenth Amendment claim under § 1983. *See id.* Because Plaintiff's claim of deprivation of due process falls outside scope of the facts of this case, Defendant's Motion for Summary Judgment is GRANTED on this claim.

### 4. 42 U.S.C. § 1983 - First Amendment

In Count Four of Plaintiff's Complaint, Plaintiff alleges a violation of § 1983 for deprivation of rights to free speech and freedom of expression. (ECF #1, p. 5). Plaintiff asserts that she was engaging in protected speech and that Defendant's actions in investigating the Minkowetz's claim deprived Plaintiff of her right to free speech. (ECF #42, p. 546). Further, Plaintiff argues that Defendant knew, or should have known, that Plaintiff committed no crime. (ECF #42, p. 546).

To successfully plead (and avoid summary judgment on) a First Amendment retaliation claim, a plaintiff must demonstrate evidence sufficient to establish three elements: 1) the plaintiff

engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit; and 3) the protected speech was a "substantial or a "motivating factor" in the adverse action. *Mt Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97S.Ct. 568 (1977); *see also Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998). A plaintiff must further show that there was a "retaliatory animus." *Kinkus*, 289 Fed.Appx. at 92.

Here, Plaintiff has not shown a retaliatory animus. In *Kinkus*, the Sixth Circuit held that the defendant police officer could no have had a retaliatory animus "because the allegations in his police report were true, and we are collaterally estopped from reaching any different conclusion." *Id.* at 92. The same is true here. Defendant's actions were merely investigatory, not an attempt to retaliate against Plaintiff for the exercise of her speech. There is no evidence, and Plaintiff asserts none, of a retaliatory motive in seeking to prosecute Plaintiff, especially not on the part of Ptl. Dunn. Plaintiff asserts that *Kinkus* does not apply to the instant case because the case involved a disorderly conduct charge stemming from a verbal altercation, not the posting of signs in a window. *See id.* at 88–89; (ECF #42, p. 546). Plaintiff's attempt to distinguish *Kinkus* is misplaced. *Kinkus* stands for the proposition that a police officer cannot be liable for a First Amendment retaliation claim under § 1983 when the police officer's "allegations in his police report were true." *Kinkus*, 289 Fed.Appx. at 92. That proposition is directly applicable in this case. Accordingly, Defendant's Motion for Summary Judgment on this claim must be granted.

Even if Plaintiff could show a violation of a constitutional right, Defendant has qualified immunity from this claim. As discussed above, to show the defense of qualified immunity, there must be a constitutional violation, that violation involved clearly established constitutional right of which a reasonable person would have known, and there is evidence that shows that what the official

did was objectively unreasonable in light of the clearly established constitutional rights. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2010). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Defendant contends that there was not a clearly established constitutional right to post allegedly threatening signs and that a reasonable person in Ptl. Dunn's position would not have known that right was clearly established. This Court agrees and finds that Ptl. Dunn should be granted qualified immunity on this claim.

The alleged violation here did not involve a clearly established right of which a reasonable person would have known. Posting signs of this nature is not a clearly established right that a person would know. Further, Ptl. Dunn's actions were not objectively unreasonable even if there was a clearly established constitutional right. Ptl. Dunn investigated the home, took pictures of the signs, created a police report, and sent that report to the prosecutor's office. Nothing in the record indicates that Ptl. Dunn's conduct was objectively unreasonable in light of the alleged constitutional violation and Plaintiff points to none. Accordingly, Defendant's Motion for Summary Judgment on this claim is GRANTED.

### 5. 42 U.S.C. § 1983 - Liberty, Safety, and Privacy

In Count Five of the Complaint, Plaintiff asserts a § 1983 claim for deprivation of right to liberty, safety, and privacy. (ECF # 1, p. 6). Plaintiff asserts no facts relevant to this claim and does not address it in her Brief in Opposition. Because Plaintiff asserted this claim without factual support, summary judgment for the Defendant is proper. Accordingly, Defendant's Motion for Summary Judgment on this claim will be GRANTED without opposition.

## B. Intentional Infliction of Emotional Distress

In Count Six of the Complaint, Plaintiff asserts a state law claim of intentional infliction of emotional distress. (ECF #1, p. 6–7). Under Ohio law a plaintiff must prove:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Ondo v. City of Cleveland*, 795 F.3d 597, 611–12 (6th Cir. 2015); *see also Yaeger v. Local Union 20*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666 (1983). "Ohio courts narrowly define 'extreme and outrageous conduct,' such that this standard is difficult to meet." *Ondo*, 795 F.3d at 612.

Defendant argues that there is no genuine issue of material fact because Defendant's conduct was not "extreme and outrageous." (ECF # 35, p. 190–91). Plaintiff contends that Defendant's conduct throughout the investigation demonstrated extreme conduct. (ECF #42, p. 546–47). However, nothing in the record suggests that Defendant's conduct reached the standard of "extreme and outrageous" conduct. Defendant investigated Plaintiff's home and took pictures. Defendant had only a brief conversation with Plaintiff. There was no further contact between the two parties. Nothing in the record indicates extreme and outrageous conduct, utterly intolerable in our society. Further, the nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 149. The non-moving party must cite "to particular parts of materials in the record" or show "that the [admissible] materials cited [by the other party] do not establish the absence or presence of a genuine dispute."

FED. R. CIV. P. 56(c). Here, in Plaintiff's Brief in Opposition, Plaintiff simply reiterates that Defendant's conduct was "extreme and outrageous" without citing any particular facts. (ECF #42, p. 546–47). Plaintiff merely states that the "aforementioned facts" demonstrate a genuine issue of material fact, but fails to cite any particular facts to establish this claim. (ECF #42, p. 546). This is insufficient to show a dispute of material facts. As such, Defendant's Motion for Summary Judgment on this claim must be GRANTED.

### Conclusion

For the reasons set forth above, Defendant Patrolman Martin Dunn's Motion for Summary Judgment is GRANTED. Pursuant to FED. R. CIV. P. 56, Judgment is entered in favor of Defendant on all claims.

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: *November 1, 2017*